STATE HIGHWAY COMMISSION v CANVASSER BROTHERS
BUILDING COMPANY

1. LANDLORD AND TENANT—LEASE—CONSTRUCTION—INTENT.

A lease must be read as a whole with a view of ascertaining the
intention of the parties.

2. EASEMENTS—CREATION—IMPLIED EASEMENT.

An easement may be created by express grant, by reservation or
exception, by covenant or agreement, and by implication; an
implied easement must rest upon necessity and not mere
convenience.

3. EASEMENTS—CREATION—PARKING—LANDLORD AND TENANT—EVI-
DENCE—EXPERT WITNESSES—CONDEMNATION.

A shopping center tenant did not have an easement for customer
parking on an adjacent parcel of land where the owner of the
adjacent parcel, who formerly owned both the adjacent parcel
and the tenant's land, leased the adjacent parcel without
reserving a parking easement, and where this owner sold the
land to the tenant's landlord without creating an easement for
parking; therefore, a trial court properly excluded testimony by
an expert witness as to the value of the tenant's property in a
condemnation suit where the testimony was based on the
mistaken assumption that an easement for parking on the
adjacent land had been created.

Appeal from Wayne, Joseph A. Moynihan, Jr., J.
Submitted Division 1 March 11, 1975, at Detroit.
(Docket No. 19261.) Decided May 27, 1975.

Petition by the State Highway Commission,
plaintiff, against Canvasser Brothers Building
Company, to condemn property for use in highway
construction and to determine just compensation.

REFERENCES FOR POINTS IN HEADNOTES
[1] 49 Am Jur 2d, Landlord and Tenant § 141 et seq.
[2, 3] 25 Am Jur 2d, Easements and Licenses §§ 17, 20–24.

Judgment for plaintiff with a compensation determination. Plaintiff appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso* and *Janis Meija,* Assistants Attorney General, and *James Paterson,* Special Assistant Attorney General, for plaintiff.

*Travis, Warren, Nayer & Burgoyne,* for defendant.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and D. F. WALSH, JJ.

J. H. GILLIS, J. On May 7, 1970, the Michigan State Highway Commission filed a notice of taking and statement of estimated compensation in Wayne County Circuit Court with reference to a strip of privately owned land which was part of a parking lot of a neighborhood shopping center in Livonia, Wayne County. The taking was for the purpose of constructing a portion of highway I-96. The land taken consisted of portions of four separately owned adjacent parcels of property. Only one parcel, designated C-1434, is involved in this appeal.

At a jury trial held to determine just compensation for the property in question, several appraisers were called to testify. The testimony of one of these appraisers, Herbert Streukens, was objected to on the grounds that one of the assumptions on which he based his opinion was invalid.

Streukens testified that the reduction in number of parking spaces available for businesses located on C-1434 was mitigated by the fact that there were two hundred spaces on adjoining land leased by an A & P grocery store available for use by

patrons of C-1434 businesses. Defendant objected on the basis that this assumption, and therefore Streukens' opinion of value, were incorrect, because patrons of the tenants on C-1434 had no legal right to use the A & P parking lot.

After reviewing legal documents relating to the parcels of land in question, the trial court ruled that the owners and assigns of C-1434, and their patrons, had no legal right to use the A & P parking lot. The relevant portion of Streukens' testimony was ordered stricken and the jury was instructed to disregard it. The jury brought in a verdict of $117,000 damages with respect to C-1434. Plaintiff Highway Commission appeals.

Originally all the land in question here was owned by Joseph Slavik. But at the time of the taking, in May, 1970, the land designated as C-1434 had been sold, parcel by parcel, to Canvasser Brothers Building Co. The parcel of land adjacent had been leased by Slavik to the Great Atlantic and Pacific Tea Co.

Appellant argues that the legal documents in the case clearly show that all parties with rights in the parcels in question intended to establish a mutual and reciprocal right on the part of each party and each party's tenants and their customers, agents, and invitees to use of all parking areas within the shopping center.

We cannot agree with this contention. Appellee and its tenants and their invitees have no ownership or leasehold rights in the land on which appellant asserts they have a right to park. Appellant is therefore positing that appellee and its tenants and their invitees have an easement on and over the Slavik-A & P land for the purpose of parking.

After studying the documents in question, we

have determined that no easement for parking was created by Slavik in the land leased to A & P, that no easement was conveyed by Slavik to Canvasser Brothers, and that, having nothing, Canvasser Brothers could convey nothing to its tenants.

A rider in the lease between Joseph P. Slavik and A & P did provide for an easement across the north 25 feet for a private driveway, but the word easement was not used when discussing the parking arrangements.

Subsection C of the rider to the lease states:

"Lessor covenants and agrees that if any other retail store buildings are erected upon the remaining portion of Out Lot B of Buckingham Village Subdivision No. 2, the building line for at least 100 feet west of the premises described herein as indicated in the plot plan will be adhered to and that the area south of that building line for the 100' west of the premises will be developed for parking as indicated on the plot plan. Lessor further covenants and agrees that simultaneously with the occupancy of other buildings on Out Lot B additional parking facilities shall be available for lessee's use in common with lessor's other tenants.

"In the event lessee's store building is completed and available for lessee's use prior to completion of other buildings and other parking, lessor agrees to provide lessee with improved parking area and service drives as outlined in the plot plan, which other parking area shall ultimately become part of the whole as outlined in the preceding paragraph.

"Parking facilities shall be provided solely for the use of lessee's customers and its invitees, in common with lessors' other tenants, customers and invitees, and adequate parking limit postings shall be made limiting parking to two (2) hours. In the event additional store buildings are erected by lessor, a clause similar hereto shall be inserted in any leases covering such buildings."

At first glance it seems that the first paragraph

of subsection C indicates that all parking is to be shared with other tenants as tenants in common. A closer reading, however, reveals that only additional parking facilities for A & P are being discussed.

Similarly the second paragraph of subsection C discusses "other parking", *i.e.,* parking facilities which are in addition to the parking which is to be provided for lessee A & P.

Appellant relies heavily upon the third paragraph of subsection C of the rider to assert that the right of parking on lots is a reciprocal one. However, a lease must be read as a whole with a view to ascertaining the intention of the parties. *Detroit Trust Co v Howenstein,* 273 Mich 309; 262 NW 920 (1935). Reading the paragraphs of subsection C together makes it clear that the lessor therein covenants and agrees to make additional parking available to A & P on other parcels of land, and not that other tenants would be allowed to park on the land leased to A & P.

The express reservation of an easement for a driveway elsewhere in the same rider indicates that the parties knew how to create an easement if they desired to do so. They apparently did not.

Reference to the other documents presented at the hearing does not assist in proving appellant's case. One such document, an easement agreement entered into on October 13, 1969, provides for reciprocal easements for parking on C-1434 property. However, neither Joseph Slavik, the lessor of the adjacent property, nor A & P, the lessee, was a party to the easement agreement and the agreement did not bind them.

Other documents presented were deeds from Slavik to Canvasser Brothers conveying C-1434 property, and a lease between Canvasser Brothers,

as lessor, and Irwin Wright and Joseph Ainbinder, as lessees, of premises immediately adjoining the A & P. Appellant has attempted to show through these documents that there was a mutual, reciprocal right on the part of each tenant to park on the parking areas of any other tenant. Since there was no easement created between Slavik and A & P in the first instance, nothing in the subsequent deeds and leases could alter that fact.

An easement may be created by express grant,[1] by reservation or exception,[2] or by covenant or agreement.[3] No easement was created here by any of these methods.

An easement may also be created by implication.[4] However, there has been no showing whatsoever in this case that the easement contended for by appellant is necessary to the use of Canvasser Brothers land. An implied easement must rest upon necessity and not mere convenience. *von Meding v Strahl,* 319 Mich 598; 30 NW2d 363 (1948).

No easement having been created by Slavik in the land leased to A & P, it is our opinion that the trial court was correct in its determination of the rights of the parties.

Judgment affirmed. Costs to appellee.

---

[1] *Nowlin Lumber Co v Wilson,* 119 Mich 406; 78 NW 338 (1899).

[2] *Hasselbring v Koepke,* 263 Mich 466; 248 NW 869; 93 ALR 1170 (1933).

[3] *Eveleth v Best,* 322 Mich 637; 34 NW2d 504 (1948).

[4] *Bubser v Ranquette,* 269 Mich 388; 257 NW 845 (1934).