DYBALL v LENNOX

Docket No. 241296. Submitted November 4, 2003, at Lansing. Decided
November 18, 2003. Approved for publication February 24, 2004, at
9:10 A.M.

George W. and Linda S. Dyball, riparian owners of property contigu-
ous to Lake Fenton, brought an action in the Genesee Circuit Court
against William Lennox, a nonriparian owner of property that
enjoys a dominant estate with regard to an easement over the
plaintiffs' property "for the purpose of ingress and egress to and
from the premises in which they may have an interest to the
water's edge of Lake Fenton." A later deed also stated that the
easement was "for access to the lake for the [back] lot owners
. . . ." The plaintiffs sought to enjoin the defendant from installing
and maintaining a dock, using the premises for temporary storage
of boating equipment, using the premises for recreational purposes,
and attempting to exercise general dominion over the subject
premises. The court, Judith A. Fullerton, J., granted summary dis-
position in favor of the defendant and dismissed the action. The
plaintiffs appealed, alleging that the court erred in considering the
circumstances as they existed at the time the easement was
granted to determine the intent of the grantor of the easement.

The Court of Appeals *held*:

1. Where, as in this matter, the language of the easement is plain
and unambiguous, it should be enforced as written, and no further
inquiry is permitted. The court was not permitted to inquire into
the circumstances surrounding the grant of the easement or
existing at the time the easement was granted.

2. Reservation of a right of way for access does not give rise to
the riparian or littoral right to erect or maintain a dock near the
water's edge. The plain language of the easement does not suggest
that the right to maintain a dock or permanently moor a boat at the
end of the easement is within the scope of the easement.

Reversed and remanded.

1. PROPERTY — REAL PROPERTY — EASEMENTS.

An easement is to be enforced as written, with no further inquiry
allowed, where the language of the easement is plain and unambig-

uous; extrinsic evidence may be considered to determine the scope of the easement where the text is ambiguous.

2. WATERS AND WATERCOURSES — RIPARIAN RIGHTS.

Erecting or maintaining a dock near the water's edge is a riparian or littoral right; a riparian owner is one whose land is bounded by a river and riparian rights are special rights to make use of water in a waterway adjoining the owner's property.

3 WATERS AND WATERCOURSES — RIPARIAN RIGHTS — EASEMENTS.

Reservation of a right of way over the land of a riparian owner for purposes of access to the water by backlot owners does not give the backlot owners riparian rights, but only a right of way.

*Gault Davison, P.C.* (by *Frederick L. Schmoll, III,* and *Michael W. Edmunds*), for the plaintiffs.

*Reid & James, P.C.* (by *Robert J. Reid* and *Robert Brace Reid*), for the defendant.

Amicus Curiae:

*Law, Weathers & Richardson, P.C.* (by *Clifford H. Bloom*), for Michigan Lake & Streams Associations, Inc.

Before: O'CONNELL, P.J., and JANSEN and WILDER, JJ.

PER CURIAM. Plaintiffs appeal as of right from an order granting defendant's motion for summary disposition and dismissing plaintiffs' claims. On appeal, plaintiffs argue that the trial court erred because defendant's easement should be strictly construed as an easement for ingress and egress, and not for other activity. We reverse and remand.

The Crane family owned a section of the land abutting Lake Fenton. The easement in question was originally created in a September 1955 deed from Edith Crane to George Crane, which provided in relevant part, "The Easterly 16 feet of the above-described premises being reserved for the use of those parties,

their heirs, assigns, and successors, owning lots in Cranewood No. 1 Subdivision . . . for the purpose of ingress and egress to and from the premises in which they may have an interest to the water's edge of Lake Fenton." In April 1960, the Crane family deeded a parcel of that property to Sonia Newland and her husband. The deed was recorded in May 1960, and included in the deed was this language: "[s]ubject to the easterly 16.0 feet being reserved for an easement for access to the lake for the [back] lot owners in 'Cranewood No. 1.' "

Newland granted part of the property to plaintiffs, making plaintiffs riparian owners of property contiguous to Lake Fenton. Newland also deeded part of the property to defendant, who is not a riparian owner, but was in Cranewood No. 1, which enjoys a dominant estate with regard to the easement. An affidavit of Bonnie Mathis, a resident on Lake Fenton since before 1950, states that a dock could have been in place at the end of the easement since the 1950s. Defendant stated in an affidavit that he personally observed the dock starting in 1968. According to Newland's deposition, defendant obtained permission from her to install a dock on the property that she eventually sold to plaintiffs. Defendant claims that this is untrue. Since 1987, defendant has used the dock for mooring his boat.

Plaintiffs filed a complaint requesting a declaratory judgment setting forth limitations to defendant's use of the easement and requesting a permanent injunction restraining defendant from improper use. Specifically, plaintiffs alleged that defendant wrongfully abused the easement and interfered with plaintiffs' quiet possession by installing and maintaining a dock,

using the premises for temporary storage of boating equipment, using the premises for recreational purposes, and by attempting to exercise general dominion over the subject premises.

Plaintiffs filed a motion for summary disposition, pursuant MCR 2.116(B) and (C)(10), requesting that the trial court grant a permanent injunction providing that defendant be ordered to remove his dock from plaintiffs' property and be enjoined from further abuse of the easement, and requested that the trial court declare the subject easement to be for ingress and egress only. In addition, plaintiffs contended that access grants only the right of ingress and egress to the lake and no other right. In response, defendant requested that the motion be denied because the factual circumstances existing at the time the easement was created show the original grantor's intent to include the use and placement of a dock at the end of the easement within the scope of the easement. The trial court entered an order denying plaintiffs' motion for summary disposition, finding that a genuine issue of material fact existed.

Subsequently, defendant filed a motion for summary disposition contending that the factual circumstances existing at the time of the creation of the easement show the original grantor's intent to include not only the right of ingress and egress, but also to include use and placement of the dock located in Lake Fenton at the end of the easement. Defendant further contended that the scope of an easement is defined by both the language of the easement and the circumstances existing at the time of the creation of the easement. Defendant requested that the trial court enter a judgment declaring the easement in question

to include riparian rights for the benefit of the dominant tenement holders and reflecting the right to continue the historical placement of the dock at the end of the easement and that defendant has the right to store the dock on the easement. In response, plaintiffs filed a position statement contending defendant's motion should be denied because riparian rights only attach to riparian land and cannot be conveyed separate from riparian land, and because easements should be construed according to language within the four corners of the grant.

A hearing was held on defendant's motion for summary disposition. Defendant argued that no material fact was in question because the creator of the easement intended the easement holder to have use of the dock, which was there and was being used at the time the easement was granted. Plaintiffs argued that the easement was limited to ingress and egress. The trial court made the following findings:

> I think the *Little* case that has recently come out, again, indicates to us that we should consider not only the language but the surrounding circumstances. . . .
>
> [T]he Court believes the intent of the parties was to have a dock, not 10 docks, a dock. So the ruling of the Court today based on everything submitted is that Mr. Lennox may have a dock at the end of the easement here. I'm not prepared to go further and add on that he can store the dock, that he can have picnic tables or anything else. But he does have an easement for ingress and egress including, but not limited to the right to maintain the dock, have a boat on the end of the dock, and use this during the seasons as is appropriate.

The trial court entered a judgment reflecting its findings that the intent of the original grantor of the easement, Edith Crane, was to include riparian rights for

the use by the dominant tenements of the easement and that this was shown by the language of the reservation creating the easement and the use and existence of a dock on the lake end of the easement at the time of the creation of the easement. Therefore, the trial court entered a judgment that the easement was for ingress and egress, and included riparian rights, not limited to the right to maintain a dock on the lake end of the easement.

Plaintiffs' first issue on appeal is that because the language of the easement was unambiguous the trial court should not have considered the circumstances existing at the time the easement was granted in determining the intent of the grantor of the easement. We agree.

In *Little v Kin*, 249 Mich App 502, 507; 644 NW2d 375 (2002) (*Little I*), this Court provided the applicable standard of review:

> The extent of a party's rights under an easement is a question of fact for the trial court, which we review for clear error. *Dobie v Morrison*, 227 Mich App 536, 541-542; 575 NW2d 817 (1998). However, we review de novo a trial court's decision regarding a motion for summary disposition in a declaratory judgment action. *Michigan Educational Employees Mut Ins Co v Turow*, 242 Mich App 112, 114; 617 NW2d 725 (2000); *Dobie, supra* at 538. We also review de novo a trial court's rulings on equitable issues, including the grant of injunctive relief. *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 9; 596 NW2d 620 (1999); *Dobie, supra* at 541-542.

This Court in *Little I, supra* at 511-512, indicated that the rights of nonriparian owners should be determined by examining the language of the easement and the circumstances existing at the time of the

grant. In *Little v Kin*, 468 Mich 699; 664 NW2d 749 (2003) (*Little II*), our Supreme Court affirmed *Little I, supra,* but noted that, when the language of the easement grant is plain and unambiguous, a directive to consider circumstances existing at the time of the grant was inconsistent with well-established principles of legal interpretation. *Little II, supra* at 700 n 2. The Supreme Court provided that "[w]here the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." *Id.* at 700, citing *Gawrylak v Cowie*, 350 Mich 679, 683; 86 NW2d 809 (1957). In addition, our Supreme Court provided "[i]f the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." *Little II, supra.*

Pursuant to *Little II, supra,* we must first examine whether the text of the easement grant is unambiguous, because, if the text is unambiguous, the trial court erred in taking into account the circumstances existing at the time of the grant. The grant of the easement provides that it is "for the purpose of ingress and egress to and from the premises in which they may have an interest to the water's edge of Lake Fenton." A later deed in the chain of title conveys an easement "for access to the lake for the [back] lot owners in 'Cranewood No. 1.'" Plaintiffs contend that the plain language, clearly, does not grant defendant the right to construct or maintain a dock or to permanently moor a boat. While defendant contends that the use of the term "to the water's edge" creates an ambiguity regarding whether riparian rights were granted to defendant because this is traditional phrasing for the creation of riparian rights, defendant cites

no applicable authority for this contention.[1] We find that the easement grant is stated in plain and unambiguous language and, thus, the trial court was not permitted to inquire into the circumstances surrounding the grant of the easement or existing at the time the easement was granted.

Erecting or maintaining a dock near the water's edge is a riparian or littoral right.[2] *McCardel v Smolen*, 404 Mich 89, 94; 273 NW2d 3 (1978); *Thom v Rasmussen*, 136 Mich App 608, 612; 358 NW2d 569 (1984). " '[A] "riparian owner" is one whose land is bounded by a river and "riparian rights" are special rights to make use of water in a waterway adjoining the owner's property.' " *Little I, supra* at 504 n 2, quoting 78 Am Jur 2d, Waters, § 30. There is no dispute that plaintiffs are riparian owners with riparian rights. And, there is no dispute that defendant's rights

---

[1] We note that defendant does cite *Hilt v Weber*, 252 Mich 198, 218; 233 NW 159 (1930), which is not applicable to the present circumstances because it discusses language regarding the extent of a purchaser's riparian rights, and not the scope of an easement. We also note that in *Hoisington v Parkes*, unpublished opinion per curiam of the Court of Appeals, issued March 12, 1999 (Docket No. 204515), a panel of this Court determined that similar language, "ingress and egress to and from the shore and water of Sand Lake," did not convey riparian rights. In addition, in *Miller v Petersen*, unpublished opinion per curiam of the Court of Appeals, issued December 27, 1989 (Docket No. 111358), a panel of this Court determined that an easement given to backlot owners for access or ingress and egress "to a lake does not give rise to a right to build a dock or permanently moor a boat at the end of that easement." We use these opinions as a guide, and view them as persuasive, because of the limited case law, but note that unpublished opinions are not binding under the rules of stare decisis. MCR 7.215(C)(1).

[2] "Strictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral." *Thies v Howland*, 424 Mich 282, 288 n 2; 380 NW2d 463 (1985), citing *McCardel v Smolen*, 404 Mich 89, 93 n 3; 273 NW2d 3 (1978). Although, the easement in question involves land that abuts a lake, we will use the term "riparian," which is often used, in court proceedings, to describe both land that abuts a river and land that abuts a lake. See *id.*

with regard to the lake are those rights granted in the easement. Reservation of a right of way for access does not give rise to riparian rights, but only a right of way. *Thompson v Enz*, 379 Mich 667, 685; 154 NW2d 473 (1967). "[W]hile full riparian rights and ownership may not be severed from riparian land and transferred to nonriparian backlot owners, Michigan law clearly allows the original owner of riparian property to grant an easement to backlot owners to enjoy certain rights that are traditionally regarded as exclusively riparian." *Little I, supra* at 504-505.

In *Little I, supra,* the dispute involved a riparian property owner and neighboring nonriparian property "backlot" owners regarding the scope of the backlot owners' right to enjoy the lake. *Id.* at 504. The original owner granted an easement to backlot owners with full riparian rights, and the riparian property owners argued that they had superior rights in an attempt to limit the nonriparian owners' use of the easement. *Id.* In *Little I, supra,* the easement was not limited to ingress and egress, but rather provided " 'for access to and use of the riparian rights to Pine Lake.' " *Id.* at 505 (emphasis omitted). This Court determined that the trial court erred in ruling as a matter of law that the defendant's rights were limited to access, and remanded to the trial court to determine the scope of the easement. *Id.* at 514-516.[3]

In *Delaney v Pond*, 350 Mich 685, 686-687; 86 NW2d 816 (1957), our Supreme Court addressed an easement that provided for access to a river and the shore

---

[3] As noted, the Supreme Court affirmed this case, but modified a directive of this Court with regard to determining the scope of an easement. *Little II, supra* at 700 n 2.

of a lake. The Supreme Court agreed with the lower court, which had stated:

> "[T]he extent of the easement is limited by specific words to the right of access . . . . This right of access is clearly intended to permit the plaintiffs to exercise their right to enjoy the waters . . . . however, to enjoy the use of the adjacent waters cannot logically be construed as a right to use the lands . . . for purposes other than those related to the use of the water itself.
>
> "[P]laintiffs do have an unrestricted right of access to the use of the waters . . . for the purpose of swimming, fishing, bathing, wading and boating. It does not follow that the plaintiffs have the right to sun bathe on the defendants' property, for it cannot be said that sun bathing is a use of the adjacent waters, nor can it be said that permanent mooring a boat is included in the right to fish and boat. Obviously plaintiffs have the right to use the easement for the purpose of carrying their boats to the waters of the river and lake, but they cannot store them permanently on the easement way, nor attach them to stakes driven into the land." [*Id.* at 687-688 (quoting the lower court opinion).]

In *Thies v Howland*, 424 Mich 282; 380 NW2d 463 (1985), a twelve-foot section in front of some frontlot property was dedicated as a "walk" that was for the use of all subdivision owners, including the backlot owners. The "frontlot" owners sought to enjoin the backlot owners from building a dock and the backlot owners argued that they were riparian owners as coowners of the "walk." *Id.* at 286-288. The *Thies* Court summarized the law in the following way:

> Persons who own an estate or have a possessory interest in riparian land enjoy certain exclusive rights. These include the right to erect and maintain docks along the owner's shore, and the right to anchor boats permanently off the owner's shore. Nonriparian owners and members of the public who gain access to a navigable waterbody have a

> right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming. An incident of the public's right of navigation is the right to anchor boats temporarily. [*Id.* at 288 (citations omitted).]

But the *Thies* Court also noted that frontlot owners could not prevent the backlot owners from erecting a dock or permanently anchoring their boats if these activities were within the scope of the plat's dedication. *Id.* at 289. "The intent of the plattors must be determined from the language they used and the surrounding circumstances." *Id.* at 293. The *Thies* Court determined, upon examination of the plattor's intent, that the backlot owners had only an easement interest, a dock was not within the scope of the dedication and, thus, the backlot owners could not maintain a dock. *Id.* at 294-295.

We find that the plain and unambiguous language of the easement in question does not grant defendant riparian rights and, as such, does not grant defendant the rights enjoyed by riparian owners. Defendant's argument that the language "to the water's edge of Lake Fenton" raises a question of fact regarding whether riparian rights were granted is misguided. The plain language of the easement does not suggest that the right to maintain a dock is within the scope of the easement. See *Thom, supra* at 612. The terms ingress and egress to the water's edge do not show an intent to grant a right to construct and maintain a dock, a right typically reserved to riparian owners. See *Thies, supra* at 294. Defendant's allowed use of the land, pursuant to the easement, is clearly defined by the terms of the easement and must be confined to the plain and unambiguous terms of the easement. The plain and unambiguous terms of the easement do

not grant the dominant estate the right to maintain a dock or permanently moor a boat. The trial court, in making its determination, took into account the circumstances existing at the time of the grant and, therefore, erred. See *id.* Even if the trial court was only interpreting the language of the easement, its findings were clearly erroneous because nothing in the plain and unambiguous language of the easement permits or grants defendant the right to erect and maintain a dock or to permanently moor a boat at the end of the easement. See *Little I, supra* at 507. The easement was created for access or ingress and egress to the lake and cannot be expanded. Consequently, the trial court erred in granting summary disposition to defendant and denying plaintiffs' motion to have the subject of the easement declared for access,[4] and ingress and egress only.[5]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

[4] We note that access includes "a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming," and a right to temporarily anchor boats. *Thies, supra* at 288.

[5] Because of our resolution, it is unnecessary to address plaintiffs' remaining issues on appeal.